**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                             Case No. 06-20099

LARRY BOATWRIGHT,

        Defendant.

_____/

**OPINION AND ORDER SETTING AN EVIDENTIARY HEARING**

Pending before the court is Defendant Larry Boatwright's Amended Motion to

Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 based on the ineffective

assistance of his trial counsel. (Dkt. # 171.) The Government has responded, (Dkt. #

174), and Defendant has replied, (Dkt. # 178). The court will set a hearing on the

motion.

**I. BACKGROUND**

Defendant was a licensed pharmacist who admitted to law enforcement officials

that he sold narcotics for cash. He was eventually charged with dispensing controlled

substances to individuals who did not have valid prescriptions. The superseding

indictment, filed on December 20, 2007, charged him with seven counts of unlawfully

distributing controlled substances outside the scope of his professional practice in

violation of 21 U.S.C. § 841(a)(1), and one count seeking criminal forfeiture pursuant to

21 U.S.C. § 853. Defendant was allegedly unlawfully distributing controlled substances

out of two pharmacies he worked at, Super Drugs in Savannah, Tennessee, and

Boatwright Drug Company in Millington, Tennessee.[1]

Before trial, on December 24, 2007, the Government filed a motion in limine seeking to prevent Defendant "from introducing proof that other individuals at the defendant's place of business may also have been involved in illegally dispensing pharmaceuticals." (Dkt. # 41, Pg. ID 87.) A hearing on that motion was held on December 1, 2009, at which Government and Defense counsel were present but, as far as the transcript of the hearing reflects, Defendant was not. (Dkt. ## 81, 154.) The Government argued that evidence of other pharmacists' wrongdoing could not provide the basis for a defense to the crimes charged and was thus irrelevant. At most, it would show that other people were guilty of the same crime. The then presiding judge orally granted the motion.[2] (*Id.*)

Some time after that motion was granted, around May of 2011, Defendant obtained new counsel, Mr. Daniel Warlick. (Dkt. # 104.) Warlick also raised the issue addressed by the motion in limine at the start of trial in October of 2012, seeking clarification on the ruling. (Dkt. # 156, Pg. ID 479-85.) In asking for clarification, Warlick said, "that motion was ultimately ruled on under Docket Number, I believe, 78. And it was granted. There's no explanation that I can see of, just that it was granted." Indeed, the record indicates that Warlick had not reviewed the transcript of the ruling because

---

[1] Eventually, on September 25, 2012, before Defendant's October 2012 trial, the Government moved to dismiss the four counts of unlawful distribution related to the Super Drug pharmacy (Counts 2, 3, 5, and 6), but left standing the counts related to Boatwright Drug Company (Counts 1, 4, and 7) and the criminal forfeiture count.

[2] The motion was originally granted by Judge S. Thomas Anderson, who presided over the case for a period before the case was transferred to the undersigned for trial.

the transcript was not posted to the docket until after the trial, presumably when counsel requested the transcript in preparation for an appeal. (*See* Dkt. # 154.) The record indicates there was no separate written order issued relating to the ruling. The only ways Warlick could have apprised himself of the details of the ruling would have been to order the transcript of the hearing or discuss the ruling with other counsel, the Assistant United States Attorney, or Defendant.

On June 19, 2012, after the motion in limine had been granted, but before Warlick sought clarification at trial, the court held a final pretrial conference where Defendant had the opportunity to change his plea. The Government offered Defendant the opportunity to plead to Count 1 of the superseding indictment, which would cap Defendant's exposure at five years of imprisonment.[3] (Dkt. # 172, Pg. ID 882-84.) The court explained that if Defendant proceeded to trial and was convicted, he faced a much higher possible sentence, about seventeen or eighteen years at the midpoint of the guidelines. (*Id.* at Pg. ID 891-93.) Warlick informed the court that Defendant did not want to plead guilty and wanted to go to trial, which Defendant confirmed himself. (*Id.* at Pg. ID 893-94). Additionally, at that time, Warlick made the following statement on the record:

> Your Honor, I need to complete the record. I've discussed in great detail [the plea offer] with Mr. Boatwright, and I recommend that he take the plea. We've discussed the issues of ineffective assistance of counsel, that it won't be available for him to come back later and say I should have

---

[3] The Government points out that Defendant appears to mistakenly claim that the plea deal capped his exposure at 28 months. While this discrepancy casts doubt on Defendant's ability to correctly remember events that transpired around this time, the court does not view this fact as particularly relevant, as Defendant was sentenced to well over both 28 months and five years.

> talked him into this, because I've done what I could. I've explained it to
> him fairly. I will zealously defend him at a trial, and he understands that as
> well, too. But just for the record, I recommend it. He understood it and we
> discussed ineffective assistance of counsel, and he still wants to go to
> trial.

(Dkt. # 72, Pg. ID 894.) Defendant acknowledged the statement and indicated he had

no disagreement with it. (*Id.* at 895.)

At trial, after the Government presented its case-in-chief, Warlick called

Defendant as the sole defense witness. Warlick alleges in an affidavit that he discussed

this decision with Defendant and he did not object. (Dkt. # 174-1, Pg. ID 923.)

Defendant's affidavit claims the decision was a surprise. (Dkt. # 169-1, Pg. ID 845.) The

jury returned a verdict finding Defendant guilty on all three counts of unlawfully

distributing controlled substances. Thereafter, the court sentenced Defendant to 188

months imprisonment. Defendant appealed, and the Sixth Circuit affirmed the court's

judgment. (Dkt. # 161.)

On July 1, 2015, Defendant's new post-conviction counsel, Mr. Jeremy Gordon,

filed a standard, fill-in-the-bank § 2255 motion form. (Dkt. # 169.) That form was,

however, largely blank. The form listed only the place of confinement, a case caption

and number, the convictions at issue, and marked a check-box indicating that

Defendant had a jury trial and testified at the trial. (*Id.* at Pg. ID 832.)  Attached to the

form was a declaration by Defendant, laying out the factual basis for his ineffective

assistance claim along with a handwritten list of "potential witnesses." (Dkt. ## 169-1,

169-2.) Neither the form nor the declaration were signed by Defendant's attorney or

Defendant himself, and the blank form motion contained no legal argument and stated

no grounds for relief. On July 13, 2015 Defendant's attorney filed an amended motion.

4

(Dkt. # 171.) This time the form was filled out properly and signed, Defendant's declaration was executed, and there was a Memorandum of Law and Facts attached.

Among other things, Defendant claims that based on counsel's advice, he believed that if he rejected the plea he could proceed to trial and validly assert a defense based on the illegal conduct of the other pharmacists. (Dkt. # 169-1, Pg. ID 844.) He also argues that Warlick failed to explain "what was required to be convicted of the charges," such as "what the elements of the offenses were, or that minimal additional proof necessary [sic] to convict given the inculpatory statements [he] made to police." (*Id.* at Pg. ID 845.)

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The defendant must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Additionally, a one-year period of limitation applies to all motions filed under 28 U.S.C. § 2255. 28 U.S.C. § 2255. The limitation period runs from the latest of–

(1) the date on which the judgment of conviction becomes final;

5

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

## III. DISCUSSION

### A. Timeliness

The Government first argues that because Defendant filed only an unexecuted and nearly totally blank form § 2255 motion within the one-year statute of limitations, his motion is time barred. They argue, essentially, that the initial filing was so deficient that the later amendment, filed after Defendant's July 2, 2015 deadline to file his motion, cannot relate back to the original. In support of this argument, the Government cites Rule 2 of the Rules Governing Section 2255 Proceedings, which requires that a motion to vacate, among other things, specify the grounds for relief, state the relief requested, and be signed by the movant. Because Defendant did not fulfill those requirements, the Government asserts that the "filing was therefore a nullity that did not toll the limitations period." (Dkt. # 174, Pg. ID 914.)

Defendant responds by citing Rule 3(b), which governs the filing of § 2255 motions, and the accompanying Advisory Committee notes. Rule 3(b) was amended in 2004 to allow for more liberal docketing of defective motions. The Advisory Committee notes to Rule 2 and Rule 3 state:

[U]nder revised Rule 3(b), the clerk is required to file a motion, even

though it may otherwise fail to comply with the provisions in revised Rule 2(b). The Committee believed that the better procedure was to accept the defective motion and require the moving party to submit a corrected motion that conforms to Rule 2(b).

Rules Governing Section 2255 Proceedings R. 2, advisory committee note. The note to Rule 3 specifically mentions the harsh operation of AEDPA's one-year statute of limitations, and notes that "a court's dismissal of defective motion may pose a significant penalty for a moving party who may not be able to file a corrected motion within the one year limitation period." The court agrees that the Rules and notes reflect a clear preference for allowing a movant to correct a defective motion without dismissal and without causing him to run afoul of the limitation period.

Other courts have reached the same conclusion. In *Michel v. United States*, 519 F.3d 1267 (2008), the Eleventh Circuit considered whether a timely § 2255 motion filed without the required signature should be considered a valid filing. The court held, as this court does now, that the amended § 2255 Rules dictate that a technically deficient filing should none the less be accepted by the clerk and docketed, to be corrected at some later date.

Though a technically deficient motion must be docketed, the original and amended motions must still meet the minimum requirements to allow the amendment to relate back to the original motion. Federal Rule of Civil Procedure 15(c) allows for an amended pleading to relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Addressing this rule in the habeas context, the Supreme Court held that an amendment may relate back

when the amended claim arises from a "common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005).

Here the original and amended motions meet that bar. Indeed, the operative facts in the original and the amended claims are identical, it is merely the form and the satisfaction of certain technical requirements that has changed. Though improperly lodged with the court in a declaration attached to the deficient motion, Defendant's declaration lays out the facts that provide support for his ineffective assistance of counsel claim. While the motion was deficient in nearly every other way, it at least provided fair notice of the factual grounds on which Defendant's claim rests. Relation back requires only that the amendment, too, rests upon that "common core of operative facts" asserted in the original complaint, and here the amendment does that.

The Government's timeliness argument fails.

### B. Ineffective Assistance of Claim

Having decided that the motion is timely, the court now considers the merits of Defendant's ineffective assistance of counsel claim. Defendant argues that Warlick was ineffective because he (1) provided advice that Defendant would be able to call witnesses to support his defense theory that other pharmacists were responsible for pharmacy shortages, (Dkt. # 169-1, Pg. ID 844), (2) failed to explain the elements of the offenses and what was necessary to convict him, and (3) failed to explain that Defendant's confession would make his conviction almost certain. Had Warlick explained these matters, Defendant argues, he would have accepted the plea offer. In a nutshell, the Government argues that because the record reflects that Defendant's trial counsel encouraged him to accept the plea, and Defendant rejected the plea against

counsel's advice, Defendant's ineffective assistance of counsel claim cannot succeed. (Dkt. # 174, Pg. ID 916.)

The Sixth Amendment provides that anyone accused of a crime has the right to the assistance of counsel in the preparation of his defense. U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 669 (1984), the Supreme Court articulated the now familiar, two-part test for determining when defense counsel provides representation so deficient that it deprives a defendant of the counsel guaranteed by the Sixth Amendment. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. This standard is "highly deferential" to defense counsel, *id.* at 688, and must take account of "the facts of the particular case, viewed as of the time of counsel's conduct," *id.* at 690. Second, the defendant must demonstrate that he was prejudiced by his counsel's deficient performance. *Id.* at 692. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As to the first prong, bad advice that causes a defendant to reject a plea bargain constitutes ineffective assistance of counsel. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1390-91 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Miller v. United States*, 561 Fed. Appx. 485, 493 (6th Cir. 2014) (citing *Lafler*, 132 S. Ct. at 1387). The right "is not contingent on whether a defendant ultimately accepts or rejects the plea." *United States v. Soto-Lopez*, 475 F. App'x 144, 145 (9th Cir. 2012) (citing *Lafler*, 132

S.Ct. at 1384). The typical case involves defense counsel who incorrectly advises a defendant to reject a plea based on the attorney's mistaken understanding of Defendant's exposure at trial as compared to his exposure under a plea agreement, painting a rosier picture of defendant's chances at trial based on an erroneous understanding of sentencing law. *See, e.g.*, *Miller v. United States*, 561 F. App'x 485, 493 (6th Cir. 2014) (remand to district court for evidentiary hearing on ineffective assistance of counsel claim).

The case at hand is not such a run-of-the-mine scenario. Here it is undisputed that Warlick recommended that Defendant take the plea. Defendant claims, however, that though Warlick ultimately recommended he accept the plea, Warlick also indicated that *if* Defendant went to trial he would be able to present a particular defense. That is, Warlick told him he could present the "defense" that other pharmacists were illegally selling drugs as well. Defendant thus asserts that he was specifically advised he would be allowed to present a defense that, as addressed above, the court had already held was not viable.[4]

Warlick avers, in his declaration attached to the Government's response, that he did in fact discuss the ruling on the motion in limine, the elements of the crime, and the import of Defendant's confession. Warlick states that he never advised Defendant that he could assert this theory and made it clear that this was not a defense to the crimes

---

[4] Later, rejecting Defendant's appeal (handled by Warlick), the Sixth Circuit held that "[t]he district court did not abuse its discretion by prohibiting Boatwright from presenting proof that other individuals may also have been involved in unlawfully dispensing narcotics." *United States v. Boatwright*, No. 13-5212, slip op. at 2 (6th Cir. April 3, 2014).

charged. (Dkt. # 174-1, Pg. ID 923.) Though not conclusive, this assertion may be at odds with the record, which indicates that Warlick had not yet requested the transcript of the hearing at which the court ruled orally on the motion in limine. Warlick argued at the start of trial that he should able to put on evidence in support of that defense theory.[5] (Dkt. # 156, Pg. ID 481-82.) Defendant's affidavit, predictably, asserts that Warlick did not discuss or explain any of these matters, and if Defendant had known he could not assert this defense, he would have accepted the plea bargain.

The colloquy conducted with the court at the pretrial hearing where Defendant rejected the Government's plea deal sheds little light on this narrow issue related to the motion in limine. While the court discussed, at length, with Defendant his potential exposure at trial as compared to his exposure under the plea agreement, the court did not discuss the underlying substantive charges, potential defenses (or lack thereof), or the substance of the motion in limine that had been granted. Defendant did state that he had no further need for consultation with Warlick and that he was sure of his decision to go to trial, but the court did not inquire into the specifics of what Warlick and Defendant had discussed relating to the motion in limine and the charges levied against him. Thus,

---

[5] Warlick also argued to the Sixth Circuit that he should have been able to assert this defense at trial. (Dkt. # 179, Pg. ID 938.) This too gives the court pause. First, it is evidence that Warlick believed (and therefore may have communicated that belief) that Defendant should have been able to present this defense. Second, the decision on the motion in limine was rendered about a year and a half before the plea hearing. The record does not reveal, and Warlick's affidavit does not address, whether Warlick possibly considered advising Defendant to accept the plea but request to maintain his appellate rights as to the decision on the motion in limine. While failing to do so almost certainly does not itself rise to the level of ineffective assistance, it does at least raise questions about how familiar Warlick was with the ruling on this motion when he advised Defendant about accepting or rejecting the plea.

the court has only the competing affidavits of Defendant and his attorney on which to rely to determine whether and to what effect Warlick adequately advised Defendant during the plea negotiations.

Courts have struggled to define the duties of defense counsel during plea bargaining. *See Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012) ("The inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargaining process. This is a difficult question."). The problem is exacerbated when a plea bargain is rejected, because the court and prosecution are not generally privy to defendant and defense counsel's discussions and thus have "little or no notice if something may be amiss and perhaps no capacity to intervene in any event." *Id.* at 1407. It is clear at least that an attorney must communicate the terms of a formal plea offer to his client. *Id.* at 1408. Less clear is what other supporting advice an attorney must offer when discussing a plea offer, if any at all.

The court need not take the inquiry that far, however. At issue here is whether an attorney who recommends acceptance of a plea can nonetheless give accompanying erroneous advice that could form the basis for an ineffective assistance of counsel claim when the defendant goes against his attorney's advice and rejects a plea. In the context of this case the question is, if Warlick told Defendant that a certain defense was available, when in fact a previous ruling on a motion in limine precluded the defense, did Warlick render ineffective service even though he ultimately recommended Defendant take the plea?

Discussing defense counsel's duty in general, courts have noted that "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be

required to give the defendant the tools he needs to make an intelligent decision."
*United States v. Soto-Lopez*, 475 F. App'x 144, 145 (9th Cir. 2012). "There is . . . 'a
difference between a bad prediction with an accurate description of the law and gross
misinformation about the law itself.'" *United States v. Lewis*, 477 F. App'x 79, 82 (4th
Cir. 2012) (quoting *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995)). "While we
cannot expect criminal defense lawyers to be seers, we must demand that they at least
apprise themselves of the applicable law and provide their clients with a reasonably
accurate description of it." *Id.* Here, where Warlick apparently did not obtain the
transcript of the motion in limine and apprise himself of the court's ruling on an
important evidentiary issue before advising his client on the plea bargain, it could be
said that counsel did not give his client the proper tools to make this important plea
decision or apprise himself of the law (or at least the law of the case).

Regarding the second prong of the *Strickland* test, as here, when a defendant
rejects a plea and goes to trial and receives a harsher sentence than the plea would
have allowed, the prejudice prong is met so long as the defendant shows that there is a
reasonable probability that he and the court would have accepted the plea but for
counsel's deficient performance. *Lafler v. Cooper*, 132 S.Ct. 1376, 1391 (2012). Other
than citing the two part test and stating that Defendant has failed to show cause and
prejudice, (Dkt. # 174, Pg. ID 918.), the Government offers no specific arguments as to
the prejudice prong. The Government has not, for example, alleged that Defendant
rejected the plea bargain for some other independent reason, or that the plea offer
would have been rejected by the court. Assuming Defendant can show deficient
performance, and the court finds no other independent reason that would have led

13

Defendant to reject the plea, then the prejudice prong will likely be met.

Though the record makes clear that Warlick's advice was to accept the plea deal, if Defendant's claims are true, this would not necessarily preclude a finding that Warlick gave other deficient advice during the plea bargaining process that ultimately led Defendant to reject the deal. The court will conduct a hearing to determine the veracity of the competing factual claims in Defendant and Warlick's affidavits.

## III.  CONCLUSION

Accordingly, IT IS ORDERED that a hearing be held in the 11th Floor Courtroom # 2, Memphis,  on October 24, 2016 at 8:30 a.m., at which the court will determine whether Warlick gave appropriate advice when advising Defendant on whether to accept the plea deal offered by the Government. The testimony of Defendant and Mr. Warlick will be required.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 2, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 2, 2016, by electronic and/or ordinary mail.


 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522