UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                 Case No. 06-20099

LARRY BOATWRIGHT,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S AMENDED MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE, AND DENYING A CERTIFICATE OF
APPEALABILITY**

Pending before the court is Defendant Larry Boatwright's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 based on the ineffective assistance of his trial counsel. (Dkt. #171.) The Government has responded, (Dkt. #174), and Defendant has replied, (Dkt. #178). The court held an evidentiary hearing on the motion on October 24, 2016. For the following reasons as well as those stated at the hearing, the court will deny Defendant's motion.

## I. BACKGROUND

The facts of the underlying case and procedural history were recited in the court's recent Opinion and Order Setting an Evidentiary Hearing, (Dkt. #185), familiarity with which is presumed. There, the court determined that Defendant's motion was timely and ordered an evidentiary hearing on the question of whether Defendant had been inappropriately advised by his trial counsel, Mr. Daniel Warlick, prior to his rejection of a plea bargain offered to Defendant which would have limited his exposure to five years of

imprisonment–far lower than the guideline-recommend sentence if Defendant were convicted at trial. The question centers on whether, prior to Defendant's rejection of the Government's plea offer, Mr. Warlick had failed to adequately apprise Defendant of the fact that he could not effectively prevent his conviction at trial by presenting evidence that others had participated in the same conduct but had not been prosecuted. A motion *in limine* to that effect had already been granted at an earlier hearing, though Defendant had not been present and Mr. Warlick did not learn the details of that hearing until after the plea offer had been rejected because he was not yet representing Defendant at the time.

At the evidentiary hearing on October 24, 2016, the court heard testimony from Defendant, Mr. Warlick, and Murry Wells, who was Defendant's attorney at the time of the earlier hearing on the motion *in limine*. Defense counsel indicated at the evidentiary hearing that Defendant bears the burden of proving any facts in dispute. (Rough Transcript Pg. 2.)

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The defendant must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief

2

to be obtained. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III. DISCUSSION

As discussed in this court's prior order, the Sixth Amendment provides for the right to the assistance of counsel for anyone accused of a crime. U.S. Const. amend. VI. In *Strickland v. Washington*, the Supreme Court articulated a two-part test which looks to whether, when viewed deferentially to defense counsel, the "representation fell below an objective standard of reasonableness . . . under prevailing norms," and whether the defendant was prejudiced by the deficient performance. 466 U.S. 669, 687-88, 90, 92 (1984).

### A. Quality of Representation

Defendant argues that Mr. Warlick's representation was deficient because he (1) provided advice that Defendant would be able to call witnesses to support his defense theory that other pharmacists were responsible for pharmacy shortages, (Dkt. # 169-1, Pg. ID 844); (2) failed to explain the elements of the offenses and what was necessary to convict him; and (3) failed to explain that Defendant's confession would make his conviction almost certain. At the hearing, Defendant did not present any evidence to support the second and third claim listed above, but contrary testimony from Mr. Warlick on those points was presented. (Rough Transcript at 49-50.) Plaintiff has therefore not sustained his burden on the second and third theories. The court will address the first theory below in detail.

The court is not persuaded of the reliability of Defendant's account of the facts surrounding his rejection of the plea deal. At the time Defendant decided not to accept the offer of a plea deal and instead proceed to trial, he had confessed twice orally and once in writing. (Rough Transcript 51.) Defendant's testimony reflects a mind shut out from the realities of the world around it and possessed by a kind of mantra that he would "be okay" as long as he "could call witnesses." In response to direct questions from the court, he strayed from the issue at hand and reiterated his theory of the case, (Rough Transcript at 22-25), and Mr. Warlick testified that he received similar answers when he posed these questions to his client, (Rough Transcript at 48).

When asked whether he considered the plea deal, he replied "I considered it; but I said as long as I can call witnesses, I will be okay." (Rough Transcript at 6.) He testified that, when discussing the deal with Mr. Warlick:

> he really wanted me to take it, just like Mr. Wells wanted me to take the plea deal, just like my prior lawyer wanted me to take it, that as long as I could call witnesses, I would be okay. I felt like I would be okay, and there was nothing ever said that I wouldn't. . . . I told him that as long as I could call the witnesses of the list that I sent in to him that I felt I would be okay, and he never once told me I could not call those witnesses or mentioned *in limine*.

(Rough Transcript at 20). He also testified that during the hearing where he finally rejected the plea deal, "we told the judge that as long as I could call witnesses, I'd be okay, that we wanted to go through to trial." (Rough Transcript at 8.) However, this account is refined by testimony from both Mr. Warlick and Defendant himself.

During his testimony, Defendant indicated that he believed he was innocent of some of the crimes included in the offered plea deal. (Rough Transcript at 14, 20-21.) When asked by the court to explain how he could have then truthfully pled guilty to

4

those charges while under oath, Defendant gave an explanation of his attorney's advice that is consistent with both Mr. Warlick's more nuanced account as well as Defendant's unduly optimistic view about the jury's possible interpretation:

> But I was told that if I was to be charged with quantities of drugs that we had to nail it down with the witnesses because I couldn't be charged with all the quantities missing. Therefore, it made sense to me that I would be able to call witnesses that would prove that I wasn't responsible because my sentence was based on quantities of drugs, I believe; and that's what I was led to believe by my lawyers always was that, well, you'd be sentenced at such and such a level. They'll convert these drugs into marijuana, and then they'll go to a chart and look it up.
>
> And I said, well, if the quantities are questioned and we need to make sure that the court understands the quantities, then I need to be able to call witnesses to justify or get these quantities worked out.
>
> So, I was always under the impression . . . that I would be able to call witnesses who would prove that there were thousands of drugs missing before I ever went to work out there . . . if the jury heard that, would automatically question why I am the only one being picked on.

(Rough Transcript at 23-25.)[1] This was not the only time that Defendant testified that his understanding was that the testimony would focus on attacking the quantities attributed to him. (Rough Transcript at 26.) Consistent with this account, Mr. Warlick testified that he discussed the motion *in limine* with Defendant and told him that he would be able to present evidence to dispute the inventory shortfalls attributed to Defendant on the theory that other criminal conduct explained the shortfalls. (Rough Transcript at 52). It is apparent that whatever nuance counsel supplied was either willfully misunderstood or conveniently ignored.

---

[1]The court will treat as speculative–and therefore not address–the question of whether this testimony calls into question Defendant's ability to have truthfully accepted the plea deal, which would counsel against a finding of prejudice.

5

In stark contrast to that of the Defendant, the court finds Mr. Warlick's testimony to be overwhelmingly convincing. At no point did Mr. Warlick exhibit anything but the utmost candor. He is an experienced defense lawyer, (Rough Transcript at 81), and explained that it pained him to testify against Defendant, whom he found to be a kind person facing a harsh sentence. (Rough Transcript at 53.) He testified that although he "would love to be able to say" that he "fumbled the ball on this one" that he could not indulge the impulse, because he was "duty bound" to testify truthfully as an officer of the court. (Rough Transcript at 53-54.)

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690-91.). Warlick's testimony explained as strategic some of the facts which had given the court cause for concern when it issued its earlier opinion. For example, the reason he did not call witnesses named on the witness list was that he believed that they were "not worth a tinker's [dam.]" (Rough Transcript at 75.) One sticking point was the fact that Mr. Warlick perhaps had no epistemic access to the finer details of the court's ruling on the motion *in limine* regarding witness testimony and therefore could not have properly advised Defendant about it. Mr. Warlick testified that he did not order the transcript of the motion *in limine* hearing, because he was able to determine the scope of the disposition of the motion using the materials on the electronic docket and therefore believed it would be a waste of resources. (Rough Transcript at 76-77.)

His testimony also disposes of the court's concerns that Mr. Warlick raised the motion *in limine* during the first day of trial after the plea deal had been rejected. He testified that when he asked the court to be able to present evidence on quantities despite the ruling on the motion *in limine*, it "pretty much got gutted by Judge Cleland's ruling where he let me go into that anyway." (Rough Transcript at 77.) Essentially, Mr. Warlick interpreted the motion *in limine* along with the minute entry, advised his client as to what proofs were likely to be available at trial, then sought and received assurance from the court that what he had told his client was accurate.

Perhaps at some increased expense Mr. Warlick could have obtained the motion *in limine* transcript and been even more certain about the correct statements he was giving to his client, but he made a strategic calculation as to how to use his client's available resources. That risk paid off, as Mr. Warlick's estimation of the ruling was accurate without burdening the client with the cost of the hearing transcript. Finally, Mr. Warlick explained his decision to appeal the motion *in limine* as an act of desperation rather than as evidencing attorney confusion. (Rough Transcript at 54.). Here the strategic choices are supported by reasonable professional judgments. Therefore, the court finds that the quality of representation did not fall below an objective standard of reasonableness.

### B. Prejudice

In its earlier opinion this court ruled that "[a]ssuming Defendant can show deficient performance, and the court finds no other independent reason that would have led Defendant to reject the plea, then the prejudice prong will likely be met." (Dkt. #185, Pg. ID 1129-30.) In light of the evidence presented at the hearing, it is clear that no

prejudice exists. As discussed above, the court does not find it credible that defense counsel advised Defendant that he was free to present evidence on a theory that he would be exculpated so long as other people had committed identical crimes but had not been prosecuted. To the extent that Mr. Warlick explained to Defendant that he would be able to present evidence as to other criminal operations which might have weakened the Government's case against him or affected sentencing by supplying an alternative explanation for inventory shortfalls otherwise attributed to Defendant, no prejudice resulted even if this were deficient performance. The trial transcripts show that the court permitted exactly this kind of evidence to be presented, (Rough Transcript at 79-81), so Defendant could not have been harmed by receiving this correct advice. The court finds that Defendant has not carried his burden of establishing that he was prejudiced.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal the court's decision, Defendant must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on a motion under Section 2255. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the court's analysis with respect to any of Defendant's claims because they are devoid of merit. The court will therefore deny a certificate of appealability.

## V. CONCLUSION

IT IS ORDERED that Defendant's Amended Motion to Vacate, Set Aside or Correct Sentence, (Dkt. #171), is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: December 13, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 13, 2016, by electronic and/or ordinary mail.

      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (810) 984-2056